UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YOLANDA PEREZ MAYMI, | ) | CIVIL ACTION NO. 4:22-CV-411 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

Plaintiff Yolanda Perez Maymi, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On November 15, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 21; Doc. 9-2, p. 22).  In this application, Plaintiff alleged she became disabled on July 22, 2019. Plaintiff later amended her disability onset date to October 1, 2019, when she was forty-seven years old, during the administrative hearing. *Id.* Plaintiff alleges that she is unable to work due to the following conditions: fibromyalgia, osteoarthritis, carpel tunnel, depression, and thyroid. (Admin. Tr. 221; Doc. 9-6, p. 25). Plaintiff alleges that the combination of these conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, and use her hands. (Admin. Tr. 238; Doc. 9-6, p. 42). Plaintiff has a high school education. (Admin. Tr. 222; Doc. 9-6, p. 26). Plaintiff does not speak English. Before the onset of her impairments, Plaintiff worked as a kitchen helper, home health aide, and laborer/hand packager. (Admin. Tr. 32; Doc. 9-2, p. 33).

On August 7, 2020, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 21; Doc. 9-2, p. 22). On December 8, 2020, Plaintiff's application was denied on reconsideration. *Id.* On December 17, 2020, Plaintiff requested an administrative hearing. (Admin. Tr. 21; Doc. 9-2, p. 22).

On April 6, 2021, Plaintiff, assisted by her counsel, appeared and testified by telephone during a hearing before Administrative Law Judge Howard Kauffman (the "ALJ"). *Id*. On May 3, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 33; Doc. 9-2, p. 34). On May 6, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 177; Doc. 9-4, p. 85).

On March 10, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1; Doc. 9-2, p. 2).

On March 20, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence. (Doc. 1, ¶¶ 32-33). As relief, Plaintiff requests that the court reverse the final administrative decision and enter an order awarding benefits. (Doc. 1, p. 7).

On May 20, 2022, the Commissioner filed an answer. (Doc. 8). In the answer, the Commissioner maintains that the decision denying Plaintiff's application is correct and is supported by substantial evidence. (Doc. 8, ¶ 11). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Docs. 9, 10, 11, 12, and 13).

Plaintiff's Brief (Doc. 17) and the Commissioner's Brief (Doc. 19) have been filed.  This matter is now ready to decide.

## III.  STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals. We will also discuss the standards relevant to the arguments raised in this case.

### A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[1] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[3] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[4] But in an adequately

---

[1] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[2] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[4] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[5] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[6]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla. *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[7]

---

[5] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[6] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

[7] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[8] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[9]

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n.3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular

---

[8] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[9] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

language or adhere to a particular format in conducting his analysis."
*Jones*, 364 F.3d at 505.[10]

### B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[12] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[13]

---

[10] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[11] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[12] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

[13] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

---

[14] 20 C.F.R. § 404.1520(a).

[15] 20 C.F.R. § 404.1520(a)(4).

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[17] 20 C.F.R. § 404.1545(a)(2).

him or her from engaging in any of his or her past relevant work.[18]  Once this burden

has been met by the claimant, it shifts to the Commissioner at step five to show that

jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC.[19]

### C.   STANDARDS GOVERNING THE ALJ'S EVALUATION OF MEDICAL OPINIONS & PRIOR ADMINISTRATIVE MEDICAL FINDINGS

The Commissioner's regulations carefully define the sources and types of

statements that can be considered "medical opinions."[20]  The regulations also

recognize another type of statement that does not meet the strict definition of medical

opinion, but is nonetheless evaluated under the same framework. This type of

statement is called a "prior administrative medical finding" and is, in layman's

terms, a state agency consultant's medical opinion.[21]

The regulatory framework for evaluating medical opinions and prior

administrative medical findings includes both factors to guide the analysis, and very

---

[18]42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

[19] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

[20] 20 C.F.R. § 404.1502(d) (defining medical source); 20 C.F.R. § 404.1513(a)(2) (defining the types of statements that are medical opinions).

[21] 20 C.F.R. § 404.1513(a)(5) (defining prior administrative medical finding).

specific articulation requirements that must be met in addition to the well-established requirements that apply generally to the ALJ's decision as a whole.

This regulation directs that an ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors:

(1)     the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability);

(2)     the extent to which the medical source's opinion is consistent with the record as a whole (consistency);

(3)     length of the treatment relationship between the claimant and the medical source;

(4)     the frequency of examination;

(5)     the purpose of the treatment relationship;

(6)     the extent of the treatment relationship;

(7)     the examining relationship;

(8)     the specialization of the medical source; and

(9)     any other factors that tend to support or contradict the opinion.[22]

---

[22] 20 C.F.R. § 404.1520c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[23] Unlike prior regulations, under the current regulatory scheme, when considering medical opinions and prior administrative medical findings, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[24]

The Commissioner's regulations also provide several "articulation" requirements. First, the ALJ is always required to explain how he or she considered the "supportability" and "consistency" of a medical source's opinion or a prior administrative finding.[25] Second, the ALJ is only required to articulate how he or she considered the other factors if there are two equally persuasive medical opinions about the same issue that are not exactly the same.[26] Third, if one medical source submits multiple medical opinions, an ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis.[27] Fourth, an ALJ is not required to articulate how evidence from non-medical sources is considered

---

[23] 20 C.F.R. § 404.1520c(b)(2).

[24] 20 C.F.R. § 404.1520c(a).

[25] 20 C.F.R. § 404.1520c(b)(2).

[26] 20 C.F.R. § 404.1520c(b)(3).

[27] 20 C.F.R. § 404.1520c(b)(1).

based on the 20 C.F.R. §§ 404.1520c and 416.920c factors.[28] Fifth, the ALJ is not required to articulate or provide any analysis about how he or she considers statements on issues reserved to the Commissioner or decisions by other governmental or nongovernmental entities.[29]

### D. GUIDELINES FOR THE ALJ'S EVALUATION OF MEDICAL DETERMINABILITY AT STEP TWO

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test.[30]

To be considered medically determinable, an impairment must be established by objective medical evidence from an acceptable medical source.[31] A claimant's statement of symptoms, a diagnosis that is not supported by objective evidence, or a medical opinion not supported by objective evidence, is not enough to establish the existence of an impairment.[32] A claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect a

---

[28] 20 C.F.R. § 404.1520c(d).

[29] 20 C.F.R. § 404.1520b(c).

[30] 20 C.F.R. § 404.1520(a)(4)(ii).

[31] 20 C.F.R. § 404.1521.

[32] 20 C.F.R. § 404.1521; 20 C.F.R. § 404.1502.

claimant's ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present.[33]

Symptoms or limitations that a claimant alleges are caused by a non-medically determinable impairment are excluded from an ALJ's RFC assessment.

### E. EVALUATING CHALLENGES TO AN ALJ'S RFC ASSESSMENT

One oft-contested issue in Social Security Appeals relates to the claimant's residual capacity for work in the national economy. A claimant's RFC is defined as the most a claimant can still do despite his or her limitations, taking into account all of a claimant's medically determinable impairments.[34] In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe.[35] An "RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[36]

---

[33] 20 C.F.R. § 404.1529(b).

[34] 20 C.F.R. § 404.1545.

[35] 20 C.F.R. § 404.1545.

[36] SSR 96-8p, 1996 WL 374184 at *7.

Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective.[37] The ALJ is required to discuss the claimant's ability to perform sustained work activity in an ordinary work setting on a regular and continuing basis (8-hours per day, 5-days per week), and describe the maximum amount of each work-related activity the claimant can perform based on the evidence available in the case record.[38] The ALJ is also required to explain how any material inconsistencies in the case record were considered and resolved.[39]

Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

---

[37] *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

[38] *Id.*

[39] *Id.*

## IV.   DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1)     "Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in Plaintiff's residual functional capacity from those impairments that the Administrative Law Judge considered to be severe, including fibromyalgia, osteoarthritis, degenerative disc disease, carpal tunnel syndrome and ulnar neuropathy" (Doc. 17, p. 1);

(2)     "Whether the Administrative Law Judge erred and abused his discretion in failing to consider the limitations from those conditions that the Administrative Law Judge did not consider to be severe, or even motioned in his decision, including Plaintiff's diagnosed and treated anxiety, depression, migraine headaches, bladder control issues, and right shoulder tendinopathy" (Doc. 17, pp. 1-2); and

(3)     "Whether the Administrative Law Judge erred and abused his discretion in failing to afford proper weight to opinions and limitations from the Consultative Exam physicians, Dr. O'Brien, and from the Functional Capacity Evaluation as compared to the opinions from the State Agency Consultants" (Doc. 17, p. 2).

We construe Plaintiff's brief as raising the following issues:

(1)     Whether the ALJ properly evaluated medical opinions by Physical Therapist Carrie Dietz, Nurse Practitioner O'Brien, and prior administrative medical findings by the state agency consultants;

(2)     Whether the ALJ considered all of Plaintiff's medically determinable impairments; and

(3)     Whether the ALJ accounted for all of Plaintiff's credibly established limitations in the RFC assessment.

We begin our analysis by summarizing the ALJ's findings, and then will discuss each argument.

Page 15 of 35

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his May 2021 decision, the ALJ found that Plaintiff meets the insured status requirement of Title II of the Social Security Act through December 31, 2021. (Admin. Tr. 23; Doc. 9-2, p. 24). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between October 1, 2019 (Plaintiff's amended onset date), and May 3, 2021 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 23; Doc. 9-2, p. 24).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: fibromyalgia, osteoarthritis, degenerative disc disease, carpal tunnel syndrome, and ulnar neuropathy. (Admin. Tr. 23; Doc. 9-2, p. 24). The ALJ also identified the following medically determinable non-severe impairments: hyperthyroidism, migraine headaches, gastroesophageal reflux disease, obesity, anxiety disorder, and depressive disorder. (Admin. Tr. 24; Doc. 9-2, p. 25).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled

the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 26; Doc. 9-2, p. 27).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) except that Plaintiff:

> may frequently stoop, reach overhead with her right upper extremity, and handle and finger with her bilateral upper extremities and occasionally balance, kneel[,] crouch, crawl, and climb ramps, stairs, ladder[s], ropes or scaffolds. The claimant must avoid concentrated exposure to extreme heat, humidity, vibration, unprotected heights, and moving machinery parts.

(Admin. Tr. 27; Doc. 9-2, p. 28).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 32; Doc. 9-2, p. 33).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 32-33; Doc. 9-2, pp. 33-34). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: housekeeping cleaner, DOT #323.687-014; electrical accessories assembler, DOT #729.687-010; and conveyor line bakery worker, DOT #524.687-022. *Id*.

**B.     THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION EVIDENCE**

Plaintiff argues that the ALJ did not properly evaluate the opinions of physical therapist Carrie Dietz and consultative examiner Rose O'Brien. Plaintiff also argues that the ALJ's analysis of the state agency consultant opinions is defective because the ALJ did not articulate how the treatment relationship or specialization factors were considered.

### 1.     Carrie Dietz's Functional Capacity Evaluation

On June 30, 2020, Physical Therapist Dietz assessed that Plaintiff could: frequently (up to six hours per day) sit; occasionally (up to two hours) stand; frequently (up to six hours) walk; occasionally lift and/or carry twenty pounds; frequently climb stairs and crawl; and occasionally bend/stoop, squat/crouch, kneel, and climb ladders. (Admin. Tr. 635; Doc. 9-7, p. 325). She assessed that Plaintiff "demonstrated the ability to tolerate light work level on a part time basis or sedentary work level on a full time basis." *Id.* She also noted that Plaintiff "gave a self-limited effort on many tasks indicating pain as a limiting factor." *Id.*

In his decision, the ALJ found that Physical Therapist Dietz's functional capacity assessment was persuasive. In doing so, the ALJ explained:

> The undersigned considered the opinion of Carrie Dietz, the claimant's physical therapist. On June 30, 2020, Ms. Dietz determined the claimant had the ability to perform light work on a part time basis or sedentary work on a full time basis (Exhibit 11F). Notably, Ms. Dietz

indicated the claimant was self-limiting her participation on 33% of the tasks and there was strong evidence of low effort and inconsistent behavior (Exhibit 11F at 2). To the extent that the opinions find that the claimant can perform light work, they are supported by and consistent with the medical evidence of record, which shows that the claimant has a history of physical impairments that caused the claimant to experience pain, numbness, and a decreased ability to perform her activities of daily living as a result of her conditions. They are also supported by and consistent with the medical evidence, which indicates the claimant reported ongoing symptoms despite treatment with oral medications, physical therapy, and injectable medications. In addition, they are supported by examination findings that generally indicate the claimant had a painless range of motion, good mobility of her extremities, and improvement of her conditions with conservative treatment measures. Notably, the findings that the claimant gave low effort and inconsistent behavior supports a finding that the claimant can perform more than a sedentary range of work on a fulltime basis and is consistent with other physical examination findings that note the claimant maintained only mildly reduced strength during her consultative examination. Given the record as a whole, the opinions are persuasive.

(Admin. Tr. 31; Doc. 9-2, p. 32) (emphasis added).

Plaintiff argues that the ALJ's analysis does not comply with 20 C.F.R. § 404.1520c because he failed to consider or include some of the limitations set out in Physical Therapist Dietz's functional capacity evaluation without explanation. (Doc. 17, p. 26). Plaintiff argues that Physical Therapist Dietz's conclusion that Plaintiff could perform light work on only a part-time basis was ignored, and that the ALJ did not limit Plaintiff to "occasional pushing and pulling," "occasional one or two hand carry at any weight," and "occasional overhead reaching." (Doc. 17, p. 27).

In response, the Commissioner argues that the ALJ sufficiently addressed Physical Therapist Dietz's opinion. (Doc. 19, p. 15). The Commissioner argues that the ALJ clearly explained that Physical Therapist Dietz's conclusion that Plaintiff would be limited to sedentary work on a full time basis was not consistent with the record or with the observation that Plaintiff gave inconsistent effort during the examination. We agree that the ALJ adequately articulated his rationale as to why the "sedentary" assessment was not credited. As such, we find that the ALJ's evaluation of the "sedentary" assessment complies with 20 C.F.R. § 404.1520c.

Physical Therapist Dietz assessed that Plaintiff could push/pull up to 13 pounds occasionally, could two-handed carry twenty pounds occasionally, and could occasionally work with her arms overhead. Therapist Dietz did not comment on Plaintiff's ability to push/pull, lift or carry with lower weights. The lift/carry limitation in Physical Therapist Dietz's opinion is consistent with the ALJ's RFC assessment (which does not distinguish between single hand and two-hand carrying). As to the two other (push/pull, and overhead reaching) limitations, they are not incorporated in the RFC assessment. However, we are not persuaded that an ALJ is required to discuss every limitation set out in an opinion. Other courts to address this issue have similarly concluded that an ALJ is not required to discuss every limitation, and instead is required to articulate the persuasiveness of a source's

opinions with enough detail and clarity to permit meaningful judicial review.[40] Although the ALJ in this case did not discuss every limitation in Physical Therapist Dietz's opinion, he did discuss most of them. To the extent that he deviated from this opinion, NP O'Brien's opinion (finding that Plaintiff could frequently reach, push and pull) supports the RFC assessment.

### 2.   Nurse Practitioner O'Brien's Medical Source Statement

After performing a consultative examination, NP O'Brien completed a checkbox medical source statement. On that statement NP O'Brien assessed that Plaintiff could: frequently lift or carry up to ten pounds, and frequently lift up to twenty pounds; occasionally lift up to fifty pounds, and occasionally carry up to twenty pounds; sit up to eight hours per eight-hour workday; stand for up to four hours per eight-hour workday; walk for up to two hours per eight-hour workday; frequently reach (bilateral), handle (left only), finger (left only), feel (left only), and push/pull (bilateral); and occasionally handle (right only), finger (right only) and feel (right only), climb stairs, balance, stoop, kneel, crouch, and crawl. (Admin. Tr. 496-501; Doc. 9-7, p. 186-191). NP O'Brien also assessed that Plaintiff could never tolerate

---

[40] *See e.g. Campbell v. Saul*, 2021 WL 37478 at *16 (D.S.C. Jan. 5, 2021) ("it does not appear that 20 C.F.R. § 404.1520c and 416.920c require ALJs to separately consider each limitation in a medical source's opinion"); *B.C. v. Saul*, No. 20-1108-JWB, 2021 WL 411390 at *5 (D. Kan. Feb. 5, 2021).

unprotected heights, and could only occasionally tolerate moving mechanical parts, operating a vehicle, and extreme cold. *Id.*

The ALJ found that NP O'Brien's medical source statement was partially persuasive because Plaintiff was *more* limited than the opinion suggests. In doing so, he explained:

> The undersigned considered the opinion of Rose O'Brien, N.P., a consultative examiner. On July 15, 2020, Ms. O'Brien determined the claimant could frequent[ly] perform medium work, except that she may stand for four hours and walk for two hours in an eight-hour workday (Exhibit 4F). She further determined the claimant could frequently operate foot controls, use her left hand, and reach, push, or pull with her right hand, but only occasionally handle, finger, and feel with her right hand (Exhibit 4F). In addition, Ms. O'Brien determined the claimant could occasionally balance, stoop, kneel, crouch, crawl, and climb stairs and ramps, but must never climb ladders, ropes, or scaffolds (Exhibit 4F). She also noted that the claimant could frequently be exposed to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme heat, and vibrations and occasionally be exposed to moving mechanical parts, operation of a motor vehicle, and extreme cold, but must never be exposed to unprotected heights (Exhibit 4F). To the extent that the opinion finds that the claimant can perform less than the full range of medium work, it is not fully supported by or consistent with the medical evidence of record, given the claimant's length and extent of treatment. It is also inconsistent with the claimant's ongoing reports of symptoms despite adherence to treatment. Therefore, the opinion is only partially persuasive.

(Admin. Tr. 31; Doc. 9-2, p. 33).

Plaintiff argues that the ALJ's analysis of NP O'Brien's opinion does not comply with 20 C.F.R. § 404.1520c because the ALJ failed to consider or include

some of the limitations set out in the opinion without explanation. Plaintiff argues that NP O'Brien limited Plaintiff to "occasional handling, fingering, and feeling with her upper right extremity," and that these limitations were excluded from the RFC assessment without explanation. (Doc. 17, p. 27).

The Commissioner did not address this argument in her brief. Nonetheless, we are not persuaded that the ALJ's analysis is defective. NP O'Brien assessed that Plaintiff could only occasionally handle, finger and feel with her right upper extremity. However, on physical examination Plaintiff had intact hand and finger dexterity, with right sided grip strength at 80% and left sided grip strength at 100%. The ALJ's RFC assessment suggests Plaintiff could frequently engage in these activities with both hands, and that determination is supported by these examination findings. Accordingly, we find that substantial evidence supports the ALJ's decision.

### 3.   State Agency Consultant Prior Administrative Findings

The following four state agency consultants issued prior administrative medical findings in this case: Joanna Deleo, D.O., (Admin. Tr. 70-71; Doc. 9-3, pp. 6-7) (finding Plaintiff had no medically determinable severe physical impairment); Kevin Hollick, D.O. (Admin. Tr. 83-88; Doc. 9-3, p. 18-24) (finding Plaintiff is limited to a range of light work); Thomas Fink, Ph.D., (Admin. Tr. 71-72; Doc. 9-3, pp. 6-7) (finding Plaintiff had no medically determinable severe mental impairment);

and John Gavazzi, Psy.D. (Admin. Tr. 81-82; Doc. 9-3, pp. 16-17) (finding Plaintiff has no medically determinable severe mental impairment).

In his decision, the ALJ found that Dr. Hollick's opinion was persuasive. (Admin. Tr. 30-31; Doc. 9-2, pp. 31-32). The ALJ found that Doctors Fink and Gavazzi's opinions were persuasive. (Admin. Tr. 31; Doc. 9-2, p. 32). The ALJ found that Dr. Deleo's opinion was not persuasive. *Id.*

Plaintiff argues that the ALJ's analysis of the state agency consultant opinions does not comply with 20 C.F.R. § 404.1520c because the ALJ did not consider the treatment relationship or specialization factors. (Doc. 17, p. 28). She argues that, if considered, these factors would weigh in favor of crediting the treating and examining source opinions. *Id.* Under the applicable regulation, 20 C.F.R. § 404.1520c, the ALJ is not required to articulate how the factors of treatment relationship or specialization unless the ALJ finds that two or more opinions or prior medical findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same.[41] Plaintiff does not articulate any basis that would require the ALJ to consider the additional factors in this case, therefore the ALJ's failure to do so is not a basis for remand.

---

[41] 20 C.F.R. § 404.1520c(b)(3).

**C.** **REMAND IS NOT REQUIRED FOR EXPLICIT CONSIDERATION OF PLAINTIFF'S RIGHT SHOULDER TENDINITIS OR BLADDER CONTROL ISSUES**

Plaintiff suggests that her medically determinable non-severe impairments include: anxiety, depression, migraine headaches, bladder control issues, and right shoulder tendinopathy. (Doc. 17, p. 21). In her decision, however, the ALJ identified the following medically determinable severe impairments: anxiety disorder, depressive disorder, obesity, migraine headaches, gastroesophageal reflux disease, and hyperthyroidism. (Admin. Tr. 24; Doc. 9-2, p. 25). Notably, bladder control issues, and right shoulder tendinopathy were not identified as medically determinable impairments.

In response, the Commissioner argues that the full measure of Plaintiff's right shoulder limitations were accounted for in the RFC assessment. (Doc. 19, pp. 12-14).

Plaintiff did not allege impairment due to right shoulder tendinitis or bladder control issues in her application. During her administrative hearing, however, which was conducted via telephone with the use of an interpreter, Plaintiff reported that "her right shoulder is kind of injured so it's kind of another problem also." (Admin. Tr. 56; Doc. 9-2, p. 57). There was no discussion of Plaintiff's bladder control issues during the administrative hearing, but Plaintiff did submit records about this issue.

The Third Circuit addressed a similar scenario in *Rutherford v. Barnhart*.[42] In *Rutherford*, a claimant submitted records that showed she was obese. She did not, however, "raise obesity as an impairment or limitation before the ALJ."[43] The Circuit ultimately reasoned that "[a]n ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence."[44] In this case, Plaintiff presented evidence about right shoulder tendinitis, and about her bladder control issues. Thus, the ALJ was required to consider these impairments, and the failure to do so is an error. Nonetheless, like in *Burnett*, we find that that error is harmless in this case because Plaintiff has not shown that remand for explicit consideration of these impairments would affect the outcome of this case.

The medical records suggest that on January 7, 2019, Plaintiff was diagnosed with "Pain in right shoulder." A comment of "likely tendonitis" was written in the notes. (Admin. Tr. 317; Doc. 9-7, p. 7). Plaintiff was treated with an injection. Medical imaging reviewed on January 10, 2019, confirmed "calcific tendinitis of the right shoulder." (Admin. Tr. 320; Doc. 9-7, p. 10). On October 17, 2019, Plaintiff presented with intermittent right shoulder pain. (Admin. Tr. 351-352; Doc. 9-7, pp.

---

[42] 399 F.3d 546 (3d Cir. 2005).

[43] *Id.* at 552.

[44] *Id.* (quoting *Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir. 2004)).

41-42). She was "positive for impingement and Supraspinatus tendonitis." *Id.* She was prescribed home exercise and physical therapy. *Id.* Plaintiff was discharged from physical therapy in December 2019 after making "excellent gains," her shoulder was pain free at that time. (Admin. Tr. 355; Doc. 9-7, p. 45); (Admin. Tr. 453; Doc. 9-7, p. 143) ("Patient demonstrates full ROM without pain in (B) shoulders. Her pain levels within the last week in the (R) shoulder from best to worst are: 0-4/10"). On May 15, 2020, treatment notes suggest that Plaintiff's right shoulder pain was not responsive to physical therapy or injections. (Admin. Tr. 471; Doc. 9-7, p. 161). Medical imaging confirmed tendinopathy. (Admin. Tr. 480-481; Doc. 9-7, pp. 170-171). On October 4, 2020, Plaintiff received treatment from an orthopedic surgeon, and was diagnosed with impingement syndrome of the right shoulder with bicipital tendinitis. (Admin. Tr. 543; Doc. 9-7, p. 233). On October 20, 2020, the orthopedic surgeon reported that, with treatment, her functional ability improved significantly, and that with the exception of home exercises Plaintiff did not require any additional treatment. (Admin. Tr. 545; Doc. 9-7, p. 236).

Based on our review of the medical records, it appears that Plaintiff's shoulder pain was attributed not only to tendinitis, but also to osteoarthritis, degenerative disc disease, carpal and cubital tunnel syndrome, and to fibromyalgia. In her decision, the ALJ acknowledged Plaintiff's right shoulder pain as follows:

In July 2020, the claimant reported ongoing right shoulder pain numbness, tingling, and cold intolerance in her hands that were associated with the median nerve distribution (Exhibit 5F at 1). At the time, the claimant reported the presence of symptoms bilaterally, but noted that it was worse on her right side (Exhibit 5F at 1). On examination, she had positive carpal tunnel compression tests, as well as cubital compression with elbow flexion bilaterally (Exhibit 5F at 2). In addition, it was noted that she had positive Tinel's findings at both cubital and carpal tunnels (Exhibit 5F at 2). Therefore, it was recommended that she undergo and additional nerve conduction testing (Exhibit 5F at 2). Additional records from July 2020 indicate the claimant underwent a consultative examination with Rose O'Brien, N.P. At the time of the examination, the claimant reported ongoing fatigue and weakness as a result of her fibromyalgia (Exhibit 4F at 3). She also reported osteoarthritis that resulted in lower back pain and throbbing that was exacerbated with prolonged physical exertion (Exhibit 4F at 3). The claimant also noted pain and weakness in her bilateral wrists due to her carpal tunnel syndrome (Exhibit 4F at 3). On examination, the claimant had a normal gait and could walk on her heels and toes without difficulty (Exhibit 4F at 5). She also maintained a full squat and normal stance (Exhibit 4F at 5). However, she had a total of 10 trigger points in the occipital muscle, trapezius, gluteal bilateral hip, and lateral epicondyle areas (Exhibit 4F at 6). Despite this, she had stable and nontender joints and 4/5 strength in her upper and lower extremities (Exhibit 4F at 6). In addition, she had intact hand and finger dexterity, with right sided grip strength at 80% and left sided grip strength 100% (Exhibit 4F).

. . . .

In October 2020, the claimant underwent an orthopedic evaluation for consultation of her right shoulder (Exhibit 7F at 2). During the evaluation, she reported discomfort with overhead activities and difficulty lifting, pushing, and pulling (Exhibit 7F at 2). On examination, the claimant had pain with impingement maneuvers, but there was no sign of instability, atrophy, or radiculopathy (Exhibit 7F at 2). Notably, during this visit the claimant reported that she experienced significant improvement in her knee following the

injection (Exhibit 7F at 3). At the time, it was noted that her strength and motion arc were improving (Exhibit 7F at 3). Similarly, treatment records indicate the claimant experienced improvement in her right arm symptoms following her injection (Exhibit 7F at 4). On examination, the claimant had full range of motion of the cervical spine and was without pain on forward flexion, external rotation and abduction (Exhibit 7F at 4). At the time, it was noted that she required no additional treatment for treatment of her upper extremities (Exhibit 7F at 4). Thereafter, treatment records from January 2021 indicate the claimant's medication regimen was adjusted in an effort to better control her fibromyalgia symptoms (Exhibit 10F at 12). Additional records indicate she began to report upper extremity symptoms, as well as ongoing knee pain (Exhibit 10F; 13F at 16). In March 2021, the clamant underwent EMG nerve conduction testing, which revealed moderate left sided carpal tunnel syndrome, mild right sided carpal tunnel syndrome, and left sided cubital tunnel syndrome (Exhibit 13F at 16).

While the claimant asserts that her conditions prevent her from engaging in substantial gainful activity, the record suggests the claimant's condition is not as debilitating as alleged. Treatment records indicate the claimant has a history of physical impairments that caused the claimant to experience pain and tenderness on examination. However, the record generally indicates the claimant treated her conditions conservatively with the use of oral and injectable medications and physical therapy. Moreover, the record generally indicates the claimant had a good range of motion of her extremities and normal strength. In addition, the claimant generally experienced improvement of her conditions with conservative treatment measures, such as injectable medications and physical therapy. Similarly, the claimant's activities of daily living suggest that her conditions are not as debilitating as alleged. The claimant is able to care for her personal needs and grooming, including her ability to dress, bathe, care for her hair, shave, feed herself, and use the bathroom (Exhibit 6E;11E). She is also able to prepare simple meals and perform housework, such as light cleaning (Exhibit 6E; 11E). The claimant can go outside alone, operate a motor vehicle, and can shop in stores (Exhibit 6E; 4F). Given

the record as a whole the undersigned finds that the claimant's
conditions are not as debilitating as alleged.

(Admin. Tr. 29-30; Doc. 9-2, pp. 30-31). We agree that this analysis appears to
account for the full measure of Plaintiff's right shoulder impairment, even if the ALJ
did not separately identify right shoulder tendinopathy as a separate medically
determinable impairment at step two. The ALJ's failure to do so is harmless error in
this case.

On January 27, 2021, Plaintiff reported that she "loses some urine" when
walking to the bathroom, and that this only occurs when she has the urge to urinate.
(Admin. Tr. 609; Doc. 9-7, p. 299). In March 2021, Plaintiff received physical
therapy for her pelvic floor. (Admin. Tr. 651; Doc. 9-8, p. 12). Plaintiff's condition
improved, but did not completely resolve, with treatment. (Admin. Tr. 653; Doc. 9-
8, p. 10). Plaintiff suggests that her bladder condition would cause her to be "off
task" in the workplace. (Doc. 17, p. 22). In *Burnett*, the Third Circuit observed that
general speculation that an impairment "makes it more difficult to stand and walk,"
without more is not enough to show an error is harmful. *Burnett*, 399 F.3d at 553
(quoting *Skarbek*, 390 F.3d at 504). Similarly, Plaintiff's vague allegation that her
bladder control issues would impact "on-task behavior" is not enough to require
remand here.

### D.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT

Plaintiff argues that the ALJ improperly excluded certain credibly established limitations caused by the combination of her medically determinable severe and non-severe impairments from the RFC assessment.

### 1.   The ALJ Adequately Accounted for the Alleged Limitations Caused by Concentration Deficits (Unscheduled Breaks and Absences)

Plaintiff argues that the ALJ failed to account for the full extent of Plaintiff's limitations in the area of concentration. (Doc. 17, pp. 15, 22).

Plaintiff argues that symptoms related to her medically determinable impairments of anxiety disorder, depressive disorder, migraine headaches and the pain caused by her medically determinable impairments of fibromyalgia, osteoarthritis, degenerative disc disease, carpal tunnel syndrome, and ulnar neuropathy, impair her ability to concentrate. (Doc. 17, pp. 15 16). She argues, relying on a series of treatment records, that her pain and other symptoms are genuine and severe, and would result in Plaintiff being "off task," require Plaintiff to take multiple unscheduled breaks, and result in absenteeism.

In response, the Commissioner argues that the ALJ "carefully considered and discussed why Plaintiff's impairments regardless of the designation left her with

sufficient functioning to manage the demands of light work." (Doc. 19, p. 12). On

the issue of concentration, the Commissioner argues:

> While Plaintiff argues that the ALJ failed to sufficiently consider how
> her impairments affect concentration (Pl.'s Br. at 22), the ALJ's step
> five finding suggests something different. Here, all three representative
> occupations upon which the ALJ relied at step five were unskilled (Tr.
> 33). In performing unskilled jobs "concentration is not critical." *See*
> Program Operations Manual System (POMS) DI 25020.010(A)(3),
> (B)(3), http://policy.ssa.gov/poms.nsf/lnx/0425020010 (effective April
> 5, 2007) (providing that "centration is not critical" in performing
> unskilled work); *Menkes v. Astrue*, 262 F.App'x 410, 412 (3d Cir.
> 2008) ("[P]erforming a 'simple routine task' typically involves low
> stress level work that does not require maintaining sustained
> concentration."). Therefore, the ALJ's choice of work for Plaintiff
> clearly confirms that the ALJ considered any limitations associated
> with Plaintiff's non-exertional impairments.

(Doc. 19, pp. 14-15).

In his decision, the ALJ considered Plaintiff's allegations that her pain and

other limitations made it difficult to concentrate. At step three, the ALJ concluded

that this limitation was "mild." (Admin. Tr. 25; Doc. 9-2, p. 26). In doing so, the

ALJ considered Plaintiff's medical records and daily activities, and concluded that

those records did not establish the existence of any significant limitation in

concentration. *Id.* Later in the decision, the ALJ also evaluated Plaintiff's allegations

of pain, and similarly concluded that although Plaintiff had several medically

determinable impairments that could cause pain, her treatment records showed that

she often had a painless range of motion, had good mobility, had stable and

nontender joints, normal strength, intact hand and finger dexterity, and had only a minor loss of grip strength in one hand (80% grip strength in right hand, suggesting only a 20% loss). (Admin. Tr. 28-28; Doc. 9-2, pp. 29-30). Treatment records document a significant improvement in Plaintiff's pain with physical therapy and injections. *Id.* Plaintiff has not developed the issue of why she would be unable to work due to absenteeism, she has not defined the contours of that limitation, and has not directed the court to any evidence that supports it.

Accordingly, we find that substantial evidence supports the ALJ's evaluation of Plaintiff's ability to concentrate, remain on task, and maintain attendance.

### 2. The ALJ Adequately Accounted for Plaintiff's Ability to Lift, Carry, Reach, Push, Pull, Finger, Handle, and Feel

Plaintiff argues that the ALJ did not account for the full extent of her limitations in lifting, carrying, reaching, pushing, pulling, fingering, handling, and feeling. (Doc. 17, pp. 15, 22-23). Specifically, Plaintiff argues that the ALJ did not account for the full extent of her neck, shoulder, arm, hand and finger pain caused by her fibromyalgia, osteoarthritis, degenerative disc disease, carpal tunnel syndrome, and ulnar neuropathy. (Doc. 17, pp. 15-16).

In response, the Commissioner argues that the ALJ carefully considered and discussed the limitations Plaintiff experiences due to pain. (Doc. 19, pp. 11-14).

On this issue the ALJ discussed Plaintiff's treatment records in detail, (Admin.

Tr. 28-30; Doc. 9-2, pp. 29-31), and then explained:

> While the claimant asserts that her conditions prevent her from engaging in substantial gainful activity, the record suggests the claimant's condition is not as debilitating as alleged. Treatment records indicate the claimant has a history of physical impairments that caused the claimant to experience pain and tenderness on examination. However, the record generally indicates the claimant treated her conditions conservatively with the use of oral and injectable medications and physical therapy. Moreover, the record generally indicates the claimant had a good range of motion of her extremities and normal strength. In addition, the claimant generally experienced improvement of her conditions with conservative treatment measures, such as injectable medications and physical therapy. Similarly, the claimant's activities of daily living suggest that her conditions are not as debilitating as alleged. The claimant is able to care for her personal needs and grooming, including her ability to dress, bathe, care for her hair, shave, feed herself, and use the bathroom (Exhibit 6E;11E). She is also able to prepare simple meals and perform housework, such as light cleaning (Exhibit 6E; 11E). The claimant can go outside alone, operate a motor vehicle, and can shop in stores (Exhibit 6E; 4F). Given the record as a whole the undersigned finds that the claimant's conditions are not as debilitating as alleged.

(Admin. Tr. 30; Doc. 9-2, pp. 31).

The ALJ considered and discussed the records Plaintiff cites in her brief., and reached a reasonable conclusion. Although Plaintiff disagrees with the ALJ's evaluation of that evidence, this without more is not a basis for remand.

## V.   CONCLUSION

Accordingly, Plaintiff's request for relief is DENIED as follows:

(1)   The final decision of the Commissioner is AFFIRMED.

(2)   Final judgment will be issued in favor of the Commissioner.

(3)   Appropriate orders will be issued.

Date: March 24, 2023                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge